No.——

First Circuit

---

## COLEMAN v. ADAM

---

(Jan. 7, 1927. Opinion and Decree.)
(Feb. 12, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Injunction—Par. 55; Appeal—Par. 625.

The finding of the trial court that defendant had failed to make a showing, justifying the issuance of a writ of injunction and nullifying the act of mortgage which he signed, being clearly correct, is affirmed.

Appeal from the Parish of Vermilion. Hon. W. W. Bailey, Judge.

Action by Mary B. Coleman against Emma Adam.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

J. E. Kibbe, of Abbeville, attorney for plaintiff, appellee.

L. A. Goudeau, of Lake Charles, attorney for defendant, appellant.

Kitchell & Boudreaux, of Abbeville, attorneys for defendant in rule and appellee, Desire and Leonard Meaux.

LECHE, J. The relief prayed for by defendant in this, an incidental proceeding to the main suit, is to have declared as null and void, a judicial sale of her separate and paraphernal property, made to Leonard and Desire Meaux by the sheriff of the Parish of Vermilion, under executory process issued in the above entitled cause.

The plaintiff, as transferee, held a promissory note of six hundred dollars secured by conventional mortgage upon forty acres of land belonging to defendant, wife of Leon Marceaux. The note became past due and was not paid, whereupon, plaintiff obtained executory process and caused the property to be seized, advertised and sold at public auction. Leonard and Desire Meaux, who were second creditors, became the purchasers and the property was adjudicated and deeded to them.

The defendant, who occupied the premises as her own separate and paraphernal property, refused to vacate, and thereupon the purchasers applied to the District Court for a writ of possession. It was then that defendant instituted the present proceeding. She alleges that the mortgage upon which executory process had been issued as well as the sale made by the sheriff under said writ, were absolute nullities. She charges that she had acted under marital coersion and had been

forced by her husband to sign the notes and the mortgage upon her separate property to pay the husband's debts. That Leonard and Desire Meaux were fully aware of the nullity of said mortgage long before they purchased the property. She then prays that Leonard and Desire Meaux be perpetually enjoined from disturbing her in her possession and occupancy of the property and that the mortgage under which the judicial sale had been made, be declared null and of no effect and cancelled from the record of mortgages, for all other necessary decrees and costs.

The trial judge refused defendant's demand and she has, appealed.

The mortgage upon which executory process issued and under which the sale was made, was originally given by defendant in favor of the F. B. Collins Investment Company on November 24, 1920. The plaintiff in the present suit is the transferee of the Collins Company, for having acquired the notes and mortgage by special written transfer dated December 8, 1920. Mr. John Nugier was at the time, the title attorney for the whole State and the local representative in the matter of loans made by the F. B. Collins Investment Company, a concern having its headquarters in the State of Oklahoma. The act of mortgage was passed before Mr. Nugier, who was also a notary public for the Parish of Vermilion.

In making loans, the Collins Investment Company required the borrower to fill and sign a certain form of application. Its expert would then view and appraise the property and its attorney examine and pass upon the title. Guided by the reports of its appraiser and attorney, it would then pass upon the application. In this case the usual procedure was fol-

lowed, and the loan was made to defendant for six hundred dollars.

Defendant testified that the money was borrowed by her husband, that she was in great fear of him, that she was brought by him to the office of Mr. Nugier; that she did not sign the application for the loan and that the only document she signed was said to be a mortgage. She further says at first, that through fear of her husband, she did not tell Mr. Nugier anything, but cried in his presence, and she thought this showed evidence of marital compulsion. She said Mr. Nugier did not ask her why she was crying and that she therefore did not tell him the reason. She denied having signed the application for the loan. On being further examined, she said she told Mr. Nugier at the time she signed the mortgage, that she did not want the money and that she did not owe it to anybody; that Mr. Nugier made her sign a paper which, is said, was a mortgage; that he asked her who the debts were for and she told him not for her, that she did not owe anybody. She says that she signed because she feared a difficulty with her husband.

The defendant is illiterate and the only fact to which she consistently testified was that she was in fear of her husband. She does not say that he ever assaulted, brutalized or threatened her and she waivers as to the details of what took place in Mr. Nugiers' office and contradicts herself several times.

Defendant's husband, who was present when his wife testified, was then placed upon the witness stand. He seems to have been unabashed by his wife's testimony and boldly stated that he had made the application for the loan and that he paid his debts with the money. He was very reluctant in answering questions,

and in his testimony with regard to the circumstances surrounding the transaction, he tries to evade; either he does not know or he only supposes. He knows, however, that his wife signed the act of mortgage through fear, because he had threatened to strike her if she had not consented to sign.

Mr. Nugier, an experienced and reputable member of the bar, who was at the time, attorney for the Collins Investment Company and their local representative, and before whom the act of mortgage was possed, contradicts the statements of defendant as to what took place in negotiating the loan and especially as to what took place in his office. There was nothing unusual and out of the ordinary as to the manner in which the transaction was carried out. If defendant had cried in his presence, or had told him she did not want the money and that she owed no one, his suspicions would have been aroused and his sense of duty towards his client, the Collins Investment Company, would at once have compelled him to stop all negotiations, to investigate and if imposed upon by defendant's husband, to refuse the loan. But Mr. Nugier says that nothing of the kind took place. He says that defendant appeared to be very willing to borrow this money and if there had been any marital coercion, he is confident that he would have noticed it.

The trial judge held in effect, that defendant had failed to make a showing, justifying the issuance of a writ of injunction and nullifying the act of mortgage which she signed in favor of the Collins Investment Company.

He evidently did not believe the complaint of defendant and we agree with him.